

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-24-2003

# USA v. Smack

Precedential or Non-Precedential: Precedential

Docket No. 02-2620

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation
"USA v. Smack" (2003). *2003 Decisions.* Paper 155.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/155

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed October 24, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-2620

UNITED STATES OF AMERICA

v.

DION A. SMACK,
a/k/a DEE

DION A. SMACK,

*Appellant*

On Appeal From the United States District Court
For the Eastern District of Pennsylvania
(D.C. No. 99-cr-00089-2)
District Judge: Honorable Marvin Katz

Argued September 9, 2003

Before: SCIRICA, *Chief Judge,* BECKER and
GREENBERG, *Circuit Judges.*

(Filed October 24, 2003)

MAUREEN KEARNEY ROWLEY,
  ESQUIRE
Chief Federal Defender
DAVID L. McCOLGIN, ESQUIRE
Supervising Appellate Attorney
JONATHAN D. LIBBY, ESQUIRE
Research & Writing Specialist
ROBERT EPSTEIN, ESQUIRE
  (Argued)
Assistant Federal Defender
Federal Court Division
Defender Association of Philadelphia
Suite 540 West — Curtis Center
Independence Square West
Philadelphia, Pennsylvania 19106

*Counsel for Appellant*

PATRICK L. MEEHAN
United States Attorney
LAURIE MAGID
Deputy United States Attorney
  For Policy and Appeals
ROBERT A. ZAUZMER
Assistant United States Attorney
Senior Appellate Counsel
GREGORY A. PAW, ESQUIRE
  (Argued)
Assistant United States Attorney
Eastern District of Pennsylvania
Suite 1250
615 Chestnut Street
Philadelphia, Pennsylvania 19106

*Counsel for Appellee*

## OPINION OF THE COURT

BECKER, *Circuit Judge.*

This is an appeal by defendant Dion A. Smack from a judgment in a criminal case. It has a complex, almost convoluted history, compounded by a poorly drafted and

confusing application note to the U.S. Sentencing Guidelines. Although technically before us as an appeal, this case is at bottom a proceeding under 28 U.S.C. § 2255 because the real issue is whether, as Smack contends, counsel at his original plea and sentencing was ineffective in failing to bring to the Court's attention at sentencing the terms of Application Note 12 of Sentencing Guideline 2D1.1, which might have given Smack a lower offense level hence a lighter sentence had he been able to establish either that (a) he had not agreed to transact in such a large quantity of cocaine, or (b) he did not intend to provide, or was not reasonably capable of providing, the funds necessary to complete the transaction agreed to in a reverse sting initiated by the Drug Enforcement Administration with Smack and a confederate, and instead simply stipulating in the plea agreement to Smack's involvement with ten kilograms of cocaine.

Because of the odd procedural history of the case, the District Court never effectively conducted a § 2255 hearing. We have enough of a record to conclude that Smack does meet the first prong of the test for ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), because of the efficacy of his contentions as referenced above. We cannot, however, determine whether the second *Strickland* prong is met. This is because no record was ever developed on the factual questions of intent, capability, and agreement that might bear on Smack's sentence—and hence on whether he was prejudiced by receiving the sentence he did. We will therefore remand for further consideration by the District Court at a § 2255 hearing and for possible resentencing. We also call upon the U.S. Sentencing Commission to revise Application Note 12 to clarify the scope of drug transactions to which the intent and capability defenses apply (and, indeed, if they are defenses or elements), issues that have divided the federal appellate courts.

## I.   Facts and Procedural History

During January of 1999, FBI agents monitored several conversations between Michael Reis—a witness cooperating with the FBI—and John Shields. These conversations

concerned the purchase by Shields and others of varying quantities of cocaine from Reis. In some of these calls, Shields discussed his associate, Smack, who would be helping with the purchase and distribution of the cocaine.

The precise quantity of cocaine involved in the agreement is difficult to pin down; indeed, it is for this very reason that we will remand to the District Court to determine in the first instance just what the parties contemplated. It might have been as much as five kilograms, plus five more on credit, as Shields and Reis discussed initially. When Reis met Shields and Smack to complete the transaction on January 29 (after at least eight phone conversations between Reis and Shields), they discussed paying $54,000 for three kilograms, with four more kilograms to be provided on credit. But Shields had brought only about $18,000, enough to purchase one kilogram of cocaine. Shields claimed that he would have the remainder of the money in a few hours. Whatever the agreement, this was a reverse sting—"an operation in which a government agent sells or negotiates to sell a controlled substance to a defendant," USSG § 2D1.1, comment. (n.14)—and Shields and Smack were arrested immediately upon taking delivery of one kilogram of cocaine.

Shields and Smack were both indicted. Shields pleaded guilty pursuant to a cooperation plea agreement with the government, and in his sentencing memorandum argued that he and Smack had not had the wherewithal to engage in a ten-kilogram transaction; to the contrary, he submitted in his sentencing memorandum that they were never looking for more than one or two kilograms, and that even the $18,000 they did have had been supplied by a third party.

Smack also pleaded guilty. His agreement stipulated that the base offense level under the U.S. Sentencing Guidelines ("USSG" or "Guidelines") for the offense was 32, because he had attempted to purchase with the intent to distribute ten kilograms of cocaine. Smack was sentenced in a separate proceeding from Shields. After receiving the benefit of a three point reduction for acceptance of responsibility, Smack was sentenced to 120 months imprisonment, five years supervised release, and a special assessment of $100.

Neither at sentencing, nor, it appears, in the process of negotiating Smack's plea agreement, did Smack's counsel raise the issue of the applicability of Application Note 12 to USSG § 2D1.1 ("Note 12") and *United States v. Raven*, 39 F.3d 428 (3d Cir. 1994). As we discuss in some detail below, it is Note 12 which controls the quantity used for Guidelines purposes in prosecutions arising out of stings, reverse stings, and other situations where the delivered quantity of controlled substance may differ from the agreed-upon quantity. In *Raven* we indicated that (a prior version of) Note 12 applied to reverse stings, and held that, when a defendant puts his intent and ability to consummate a proposed transaction in issue, the government is required to prove the defendant's intent and ability. Smack asserts on appeal that his counsel's performance was deficient in failing to press the Note 12 /*Raven* issue and instead advising him to stipulate to a quantity (ten kilograms) at the upper bound of what the parties had considered in early negotiations.

After sentencing, Smack filed a *pro se* motion under 28 U.S.C. § 2255 alleging ineffective assistance of counsel. That motion included the ineffectiveness claim pressed here, a claim that counsel had failed to file a notice of appeal as Smack had requested, and other claims of ineffectiveness. The District Court denied that motion and denied a certificate of appealability, but this Court granted a certificate of appealability and remanded to the District Court for a hearing on whether Smack's counsel had indeed failed to file a requested notice of appeal. At that hearing, Smack was represented by the Federal Defender. The government reported that efforts to reach Smack's original (privately retained) counsel had been unsuccessful. (Indeed, even as of the date of oral argument in this case, Smack's original counsel had not been located.) Accordingly, the District Court accepted Smack's uncontroverted version of events about the failure to file a notice of appeal, and ordered him resentenced.

It appears that all involved at the resentencing viewed it as *pro forma*, i.e. merely as a vehicle to give Smack the benefit of an appealable order. But Smack had no claims to assert on direct appeal. Rather—and we confess that this is

much clearer in hindsight—the preferable approach would have been for the parties at the District Court to take up the remand as a § 2255 proceeding, because Smack's claims—most prominently the ineffective assistance of counsel claim regarding the stipulation and Note 12/*Raven* —were cognizable only in a § 2255 proceeding.

Thus, we ultimately decline to take Smack's suggestion that this case is governed by *United States v. Cocivera*, 104 F.3d 566 (3d Cir. 1996), where we held that, although we generally decline to consider a claim of ineffective assistance of counsel in the first instance on direct appeal, "in some cases, albeit rare, we may have a sufficient record on appeal to decide the issue and avoid the considerable effort of requiring the defendant to institute a collateral proceeding in order to raise the ineffective assistance of counsel claim." *Id.* at 570-71. *Cocivera* is inapposite because we do not have a sufficient record to completely dispose of Smack's claim. And yet it is appropriate that we explore those aspects of the § 2255 claim that are sufficiently developed.

In the typical case where *Cocivera* does not apply, this Court affirms the defendant's sentence, leaving him to pursue his ineffective assistance of counsel claim in a § 2255 motion. This is not the typical case. First, the District Court has already denied Smack's § 2255 motion raising a similar ineffectiveness claim, apparently rendering futile any disposition that would require Smack to first pursue his remedies in the District Court. Yet this Court did not pass on that disposition in Smack's original appeal of his § 2255 motion. Second, the key legal issues have been well-briefed and well-argued in this appeal, and it seems grossly inefficient to require the parties to go through the formalities and delay of instituting another § 2255 proceeding and a third appeal, especially in the absence of Smack's original counsel. Third, further delay is likely to deny Smack the practical benefit of any relief he is owed: His prison term commenced in October 1999, and if he prevails in this matter, Smack would receive a sentence of 60 to 63 months, a term that would expire in late 2004. Smack's term would expire even sooner if he is credited with time served prior to sentencing. Accordingly, it is practical to limit the scope of the remand.

We turn now to our discussion, mindful of the fact that what is really before us is Smack's motion under § 2255 to vacate his sentence and his plea agreement as to the stipulated offense level and quantity of controlled substance, and his concomitant request to order him resentenced.

## II.  Discussion

We exercise plenary review over the legal component of a claim of ineffective assistance of counsel. *See Parrish v. Fulcomer*, 150 F.3d 326, 328 (3d Cir. 1998). "The underlying facts are reviewed for clear error, and are subject to independent judgment 'on whether the facts thus found constitute constitutionally ineffective assistance of counsel.'" *United States v. Baird*, 218 F.3d 221, 225 (3d Cir. 2000) (quoting *Gov't of the Virgin Islands v. Weatherwax*, 77 F.3d 1425, 1430-31 (3d Cir. 1996)). Here, however, there are no findings of fact, and so, based on our own examination of the record, we will decide whether we can conclude as a matter of law that the record establishes the ineffectiveness of Smack's counsel.

*Strickland v. Washington* supplies the standard for addressing a claim of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687. As noted above, we can resolve the first prong on the record before us, but leave the second for the District Court on remand. While the Note 12 and stipulation issues are intertwined, it is convenient to take up the stipulation issue first.

A.  *The Stipulation*

To satisfy the first prong of *Strickland*, "the defendant must show that counsel's representation fell below an

objective standard of reasonableness," which means "reasonableness under prevailing professional norms." *Id.* at 688. We are satisfied that Smack's original counsel fell below this standard.

Smack's plea agreement read, in pertinent part:

> The government and defendant agree and stipulate that the narcotics offense in Count 1 to which defendant is pleading guilty carries a base offense level under the Sentencing Guidelines of 32 pursuant to Section 2D1.1(c)(4) in that the defendant attempted to possess with the intention of distributing approximately ten kilograms of cocaine.

This stipulation is somewhat perplexing in light of the course of negotiations and the actual delivery described above, especially the uncontested fact that only one kilogram of cocaine was actually exchanged at the reverse sting operation, and the posture assumed by Shields and apparently now by Smack that they had neither the intention nor the capacity to do a deal larger than one kilogram. In this situation, the deficient performance of counsel is more conventionally assessed by reference to whether the attorney-client relationship was operating as it should have—whether the defendant was aware of his counsel's stipulation, whether the defendant did or did not direct counsel to enter the stipulation, and so on. That inquiry is elusive, for Smack's original counsel has vanished and hence can not be examined on this score, though Smack can. Setting aside what was actually *transacted* (or even *agreed* to), the stipulation assigned a quantity at the outer limit of what was *discussed*. In fact, by simply pleading guilty in open court, Smack could not have done worse than his plea agreement.

Of course, a plea agreement that gains nothing for a defendant is not *per se* ineffective under *Strickland*; to hold otherwise would seriously disrupt the existing plea negotiation market. What makes the difference in this case is that there were substantial arguments to be made— based on the relevant portions of the USSG and on this Court's precedent—that Smack could be held to no more than the one kilogram actually transacted for. Smack's

original counsel was obliged to know the Guidelines and the relevant Circuit precedent, but he plainly did not. *See, e.g., United States v. Headley,* 923 F.2d 1079, 1083-84 (3d Cir. 1991) (despite limited record on appeal, sentencing counsel held ineffective for failing to argue for "minor participant" downward departure). We now turn to focus on Note 12 and *United States v. Raven,* as Smack's original counsel should have.

B. *Application Note 12 and United States v. Raven*

Application Note 12 to USSG § 2D1.1 provides in relevant part:

> In an offense involving an agreement to sell a controlled substance, the agreed-upon quantity of the controlled substance shall be used to determine the offense level unless the sale is completed and the amount delivered more accurately reflects the scale of the offense. For example, a defendant agrees to sell 500 grams of cocaine, the transaction is completed by the delivery of the controlled substance—actually 480 grams of cocaine, and no further delivery is scheduled. In this example, the amount delivered more accurately reflects the scale of the offense. In contrast, in a reverse sting, the agreed-upon quantity of the controlled substance would more accurately reflect the scale of the offense because the amount actually delivered is controlled by the government, not by the defendant. If, however, the defendant establishes that he or she did not intend to provide, or was not reasonably capable of providing, the agreed-upon quantity of the controlled substance, the court shall exclude from the offense level determination the amount of controlled substance that the defendant establishes that he or she did not intend to provide or was not reasonably capable of providing.

Since this is an offense involving an agreement to sell a controlled substance, this portion of Note 12 applies.

Note 12 is opaque and confusing. On the one hand, it seems to command that the agreed-upon quantity of controlled substance, regardless of amount delivered, be used for sentencing in a prosecution arising out of a reverse

sting. On the other hand, it seems to immediately qualify that statement ("If, however . . ."), and provide the defendant some relief by way of "establish[ing]" lack of ability or lack of intent.[1] But on a second reading, it seems that the last sentence cannot apply to reverse stings, because it refers to "the defendant . . . providing . . . the agreed-upon quantity of the controlled substance," and surely the "controlled substance" is cocaine, not dollars. It was on this seemingly compelling logic that the Court of Appeals for the Second Circuit held that, by its plain meaning, the last sentence of Note 12 does not apply to reverse stings. *See United States v. Gomez*, 103 F.3d 249, 252-53 (2d Cir. 1997).

The Second Circuit's view is not universal. In fact, there seems to be a circuit split on this question. The Courts of Appeals for the First and Tenth Circuits do appear to follow the Second Circuit. *See United States v. Perez de Dios*, 237 F.3d 1192 (10th Cir. 2001); *United States v. Brassard*, 212 F.3d 54 (1st Cir. 2000). But the Courts of Appeals for the Seventh and Ninth Circuits seem to apply the final sentence of the new Note 12 to reverse stings. *See United States v. Minore*, 40 Fed. Appx. 536 (9th Cir. 2002) (mem. op.); *United States v. Estrada*, 256 F.3d 466 (7th Cir. 2001). The Court of Appeals for the Eighth Circuit has declined to reach this question. *See United States v. Williams*, 109 F.3d 502 (8th Cir. 1997). The other Courts of Appeals do not appear to have weighed in.

We might try to make sense of Note 12 by turning our sights beyond buyers in reverse stings to look at buyers in general. As to buyers in general, Note 12 seems to be silent —the last sentence speaks only to sellers, as noted, and nothing in the note speaks to buyers. Traditional principles

---

1. Yet another question is whether this relief is by way of an affirmative defense (i.e., the defendant would bear the burden of production and the burden of proof), or by way of giving the defendant the option of putting ability or intent in issue and holding the government to its proof (i.e., the defendant would bear the burden of production, but the government the burden of proof). This was addressed in *United States v. Raven*, 39 F.3d 428 (3d Cir. 1994), which interpreted a prior version of Note 12. We take up *Raven* and that prior version of Note 12 after discussing the newer version of Note 12 in effect when Smack was sentenced.

of criminal law would suggest, though, that buyers should also have the benefit of the *mens rea* and impossibility defenses in the last sentence, *mutatis mutandis.* But if this were so, then we would be left with the peculiar result that those defenses would be available to all traffickers in controlled substances *except buyers in reverse stings. Cf. United States v. Raven,* 39 F.3d 428, 436 n.11 (3d Cir. 1994) ("[I]t seems to us fundamentally unfair that only in cases involving unconsummated drug transactions by sellers would the government have to demonstrate that the defendant intended and was able to complete the negotiated transaction."). While not irrational, the schema of Note 12 seems a bit warped—and certainly open for counsel's argument that Smack's situation merited special sentencing consideration.

Counsel could also have made the obvious argument based on our interpretation in *Raven* of an earlier version of Note 12.[2] *Raven* held that once a defendant puts his intent and capability in issue, the government must come forward with proof. And although *Raven* was a drug courier

---

2. The version of Note 12 in effect at Raven's sentencing read in pertinent part:

> In an offense involving negotiation to traffic in a controlled substance, the weight under negotiation in an uncompleted distribution is used to calculate that amount. However, where the court finds that the defendant did not intend to produce and was not reasonably capable of producing the negotiated amount, the court shall exclude from the guideline calculation the amount that it finds the defendant did not intend to produce and was not reasonably capable of producing.

*Raven,* 39 F.3d at 432.

Certainly, there are differences between this version of Note 12 and the version of Note 12 under which Smack was sentenced. First, the old Note 12 does not advert to reverse stings, while the new Note 12 has a specific provision addressing them. Second, the old Note 12 refers to the "negotiated amount"—which could refer to money—while the new Note 12 refers to "amount of controlled substance," thus excluding buyers. Third, the defenses in the old Note 12 are phrased in the conjunctive, while the defenses in the new Note 12 are phrased in the disjunctive. None of these, though, seems to compel the view that new Note 12 has necessarily consigned *Raven* to the trash heap.

case, the Court explicitly discussed the application of the last sentence of old Note 12 to buyers, sellers, and couriers alike. *Raven*, 39 F.3d at 437. In other words, Smack's original counsel had a good faith basis—indeed, an obligation—to argue that *Raven* still controls.

We offer none of this commentary as a holding on the proper construction of Note 12 as it now stands, nor do we decide whether *Raven* has in fact survived the revision of Note 12. (We are hopeful that the U.S. Sentencing Commission will take this matter up promptly and resolve it. We urge it to do so.) Rather, this discussion sets the backdrop to the scene at Smack's original sentencing when his counsel advised him to forego these arguments and stipulate to the highest base offense level conceivably supported by the facts of his case.

We observe that Smack's original counsel could have advanced either or both of two arguments in lieu of surrendering with the stipulation in Smack's plea. First, as we have illustrated, there is considerable room for argument about how Note 12 and *Raven* should operate in Smack's case. Second, even if it offers Smack no other comfort, Note 12 at the very least requires ascertaining the "agreed-upon quantity of controlled substance." As we noted above, the record on the agreed-upon quantity is not clear. But that is precisely the point: By failing to develop the record or challenge the government on the agreed-upon quantity, Smack's original counsel's performance fell below *Strickland*'s standard of "reasonableness under prevailing professional norms." 466 U.S. at 688.

Having found Smack's original counsel's performance deficient, we turn to *Strickland*'s second prong.

C. *Prejudice*

To satisfy the second prong of *Strickland*, the "prejudice" prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

We cannot resolve this question on the record before us, and we certainly cannot say that Smack "is entitled to no relief," within the meaning of § 2255. Perhaps indeed Smack is liable for ten kilograms (or seven, which carries the same base offense level of 32, *see* USSG § 2D1.1(c)(4) (base offense level 32 applies to quantities of at least five but less than fifteen kilograms of cocaine)). But perhaps he is liable for only the one kilogram that was exchanged. Accordingly, as required by § 2255, the District Court should hold "a prompt hearing" to "determine the issues and make findings of fact and conclusions of law" on whether there is a reasonable probability that, had he received effective assistance of counsel at his original sentencing, Smack would have established that he was entitled to a shorter sentence. The reasonable probability of any decrease in Smack's sentence would establish prejudice. *See Glover v. United States*, 531 U.S. 198 (2001) (holding that any reduction in sentence constitutes substantial prejudice for purposes of *Strickland* analysis). The remedy, in turn, would be to resentence Smack.[3]

For the foregoing reasons we will remand the case to the District Court so that it may conduct a § 2255 hearing. The Clerk is directed to send a copy of this opinion, calling attention to Part II.B, to the Chairwoman and members of the U.S. Sentencing Commission and its General Counsel.

A True Copy:
      Teste:

*Clerk of the United States Court of Appeals*
*for the Third Circuit*

---

3. The § 2255 hearing and the resentencing would rely on the same record. Thus, in the interests of efficiency, the District Court could in its discretion collapse the two into one.