PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-3644
_____

UNITED STATES OF AMERICA

v.

WILLIAM DAVENPORT
a/k/a Little One,
                     Appellant
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D. C. No. 1-08-cr-00424-006)
District Judge:  Honorable Christopher C. Conner
_____

Argued September 10, 2014
Before:  FISHER, JORDAN and HARDIMAN,
*Circuit Judges*.

(Filed: January 6, 2015)

Stephen R. Cerutti, II, Esq.
Christy H. Fawcett, Esq.
Office of United States Attorney
228 Walnut Street, P.O. Box 11754
220 Federal Building and Courthouse
Harrisburg, PA 17108

Christian A. Fisanick, Esq. [Argued]
Amy C. Phillips, Esq.
Office of United States Attorney
235 North Washington Avenue
P.O. Box 309, Suite 311
Scranton, PA 18503
        *Attorneys for Appellee*

J. Nicholas Ranjan, Esq. [Argued]
K&L Gates
210 Sixth Avenue
Pittsburgh, PA 15222
        *Attorney for Appellant*

———————

OPINION

———————

HARDIMAN, *Circuit Judge*.

William Davenport appeals an order of the District Court denying his motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. Davenport claims his trial counsel was ineffective when he failed to argue that the Government had breached Davenport's plea agreement.

2

Because we agree with the District Court that the plea agreement was not breached, we will affirm.[1]

## I

## A

On September 1, 2008, Drug Enforcement Administration agents executed a search warrant on a storage facility that Davenport controlled in Harrisburg, Pennsylvania. Once inside, the agents found large amounts of drug paraphernalia and cash as well as approximately 160 grams of cocaine. The facility also housed three vehicles, including a Cadillac that contained a loaded nine-millimeter pistol stashed between its seat cushions.

Several weeks later, DEA agents executed another search warrant, this time on Davenport's residence in Enola, Pennsylvania. Davenport was present during this second search and agreed to cooperate. He was taken back to the DEA's office, where he described his involvement with specific individuals in the drug trafficking business and admitted that he had purchased cocaine hydrochloride, cooked it into crack cocaine, and sold it. Davenport also admitted that the gun in the Cadillac was his.

## B

Following the searches, Davenport and five others were charged with several drug-related offenses. After initially pleading not guilty, Davenport signed a plea agreement in which he waived indictment and pleaded guilty

---

[1] The Court acknowledges the excellent advocacy of pro bono counsel, J. Nicholas Ranjan of K&L Gates LLP, on behalf of Mr. Davenport.

to a superseding information charging him with one count of conspiracy to distribute and possess with intent to distribute cocaine and cocaine base, in violation of 21 U.S.C. § 846.

The plea agreement addressed, among other things, what recommendations the parties could make at sentencing. For example, Paragraph 12 stated that the Government would seek a three-level reduction in Davenport's offense level if he accepted responsibility. Paragraph 13 permitted the Government to recommend a sentence it deemed appropriate, up to and including the maximum allowable by law. Likewise, Paragraph 26 stated that the Government could raise—and the sentencing court could consider—"all relevant information with respect to the defendant's background, character and conduct including the conduct that is the subject of the charges which the United States has agreed to dismiss[.]" Rec. No. 178, at 16–17.[2] And Paragraph 38 stated that the Government was not restricted in any way from responding to motions filed by Davenport or requests made by the sentencing court about how the Guidelines should be applied, "including but not limited to, requests for information concerning possible sentencing departures." Rec. No. 178, at 23.

Most important for this appeal, however, is Paragraph 14, which listed several specific recommendations as to how the Guidelines should be applied to Davenport's conduct. Therein, the parties initially agreed to recommend:

> that the quantity of cocaine hydrochloride attributable to the defendant is 15-50 kilos, the

---

[2] Davenport proceeded on the original record. Thus, all references to "Rec. No., at __" are to record entries in the district court docket.

quantity of crack cocaine attributable to the defendant is between 500 grams and 1.5 kilograms, the defendant obstructed or impeded or attempted to obstruct or impede the administration of justice with respect to the investigation or prosecution of the offense, *and the defendant possessed a firearm*.

Rec. No. 178, at 8–9 (emphasis added). Paragraph 14 then stated that Davenport "understands that none of these recommendations is binding" on the U.S. Probation Office or the sentencing court, either of which could arrive at different findings, and that the Government fully intended to provide "all information in its possession which it deems relevant to the application of the [Guidelines] to the defendant's conduct." Rec. No. 178, at 9.

At some point during the plea negotiations, the clause "and the defendant possessed a firearm" was stricken from Paragraph 14 and the initials "WD" and "RLM" (presumably "William Davenport" and his trial counsel, "Royce L. Morris") were handwritten next to the deletion.[3] Davenport argues that the stricken provision precluded the Government from pursuing a gun enhancement at sentencing. The Government counters that the strike-through meant nothing

---

[3] The record does not indicate when this was done. Also, Davenport says his counsel and the Government initialed the stricken provision, Davenport Br. 4, whereas the Government claims Davenport and his counsel initialed the provision, Gov't Br. 7. These ambiguities are immaterial to the outcome of this case.

more than that Davenport no longer stipulated to possession of a firearm.

At a change-of-plea hearing, Davenport affirmed that he read and understood the plea agreement, and the Government summarized the specific provisions in Paragraphs 12 and 14. The Government made no mention of the gun enhancement during its recital of Paragraph 14, but it did state that a loaded gun had been found during the search of Davenport's storage facility. Davenport admitted the facts presented, and the District Court accepted his plea of guilty.

C

The U.S. Probation Office calculated Davenport's Total Offense Level at 35, which included a two-level enhancement under United States Sentencing Guidelines (USSG) § 2D1.1(b)(1) for possessing a firearm in connection with his offense and another two-level enhancement under USSG § 3C1.1 for obstructing justice. Davenport's Criminal History Category was IV, which yielded a Guidelines range of 235 to 240 months' imprisonment in light of the statutory maximum of 20 years. Davenport raised eight objections to the PSR.

During Davenport's sentencing hearing, the Government stated that there was "the issue of whether the gun enhancement should apply." Rec. No. 313, at 2. Consequently, the Government called a DEA agent to respond to Davenport's objections to the gun and obstruction of justice enhancements. After the DEA agent and another witness testified, the District Court invited Davenport's trial counsel to argue that there was insufficient evidence to connect the firearm to the drug offense at issue. The Court then asked the prosecutor to reply, and she stated: "The area where the gun, loaded gun[,] was located was accessible from the same area where the drugs were located. I think the

6

circumstances under which the gun was possessed can be taken into consideration by the court." Rec. No. 313, at 49–50.

The District Court rejected Davenport's objections to the PSR, but varied downward and sentenced him to 199 months' imprisonment. Davenport appealed his sentence and we affirmed. *See United States v. Davenport*, 422 F. App'x 115 (3d Cir. 2011).

D

On July 3, 2012, Davenport filed a pro se motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. The District Court denied the motion, holding that the stricken clause in the plea agreement meant merely that Davenport no longer stipulated to a gun enhancement, not that the Government had waived the right to advocate for the enhancement at sentencing. Accordingly, because the Government had not breached the plea agreement, Davenport's trial counsel was not ineffective for failing to argue that it had.

Davenport appealed and we granted a certificate of appealability on the question whether Davenport's trial counsel was ineffective because he failed to object to the Government's pursuit of a two-level gun enhancement in alleged violation of the terms of his plea agreement.[4]

II

We exercise plenary review over the legal component of an ineffective assistance of counsel claim. *United States v.*

---

[4] The District Court had subject matter jurisdiction over Davenport's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. We have jurisdiction over his appeal pursuant to 28 U.S.C. §§ 1291 and 2253(a).

*Smack*, 347 F.3d 533, 537 (3d Cir. 2003). We review the underlying facts for clear error, but exercise independent judgment on whether those facts, as found by the District Court, show that counsel rendered ineffective assistance. *Id.* (quoting *United States v. Baird*, 218 F.3d 221, 225 (3d Cir. 2000)).

III

The threshold question presented is whether the Government breached Davenport's plea agreement when it urged the District Court to impose a two-level gun enhancement under USSG § 2D1.1(b)(1). We hold that it did not, so it necessarily follows that Davenport's trial counsel was not ineffective for failing to object to a non-existent breach.

A

We follow a three-step analysis in determining whether there has been a breach of a plea agreement. First, we identify the terms of the agreement and the government's alleged improper conduct. Second, we determine whether the government has violated its obligations under that agreement. And if it has, we fashion the proper remedy. *United States v. Nolan-Cooper*, 155 F.3d 221, 235 (3d Cir. 1998) (citing *United States v. Moscahlaidis*, 868 F.2d 1357, 1360 (3d Cir. 1989)).

At the outset, we determine "whether the government's conduct is inconsistent with what was reasonably understood by the defendant when entering the plea of guilty." *Id.* at 236 (quoting *United States v. Badaracco*, 954 F.2d 928, 939 (3d Cir. 1992)). "Reasonably understood" is a "purely objective" standard governed by the common law of contract. *United States v. Hodge*, 412 F.3d 479, 485–86 (3d Cir. 2005). Specifically, we look to the plain meaning of the plea agreement and eschew a "rigidly literal"

8

interpretation of it. *Id.* at 486. And we give the benefit of any doubt to the defendant, given the government's "tremendous bargaining power" in negotiating such plea agreements, *United States v. Schwartz*, 511 F.3d 403, 405 (3d Cir. 2008), and the fact that the defendant, "by entering into the plea, surrenders a number of [his] constitutional rights," *Nolan-Cooper*, 155 F.3d at 236.

Once the plea agreement has been made, the government does not have to endorse its terms "enthusiastically," *Badaracco*, 954 F.2d at 941, but it is expected to "adhere strictly to the terms of the bargain it strikes," *Moscahlaidis*, 868 F.2d at 1361 (quoting *United States v. Miller*, 565 F.2d 1273, 1274 (3d Cir. 1977)), and we will hold the government to that bargain.

B

Davenport argues that he reasonably expected that the Government would not pursue a gun enhancement based on the written terms of the plea agreement. We disagree. At the outset, we note that the extent to which the Government can be said to have advocated for an enhancement is itself debatable, given the fact that Davenport himself objected to the gun enhancement in the PSR, and the only time the Government addressed the issue at the sentencing hearing was when it was specifically asked to do so by the Court.

Davenport makes three arguments in support of his claim that the Government breached the plea agreement. First, he claims that because Paragraph 14 contains a set number of sentencing recommendations the Government would pursue, the removal of one of those recommendations—the gun enhancement—led him to reasonably believe that the Government would *not* advocate for it at sentencing. "Under the contractual interpretive canon of *expressio unius est exclusio alterius*," he argues, "the

9

expression of these items necessarily excluded anything that was not listed, including the firearm enhancement." Davenport Br. 14. He cites the Tenth Circuit's decision in *United States v. Scott*, where, on his view, the Court was presented with "nearly identical facts" and held that the government had breached a plea agreement when it agreed to take specific positions at sentencing but then sought an unstated enhancement. 469 F.3d 1335, 1338 (10th Cir. 2006). Second, Davenport leans on two Texas Supreme Court decisions for the proposition that a stricken provision in a contract "can manifest an intent to preclude or an unwillingness to be bound." Davenport Br. 17 (citing *Houston Exploration Co. v. Wellington Underwriting Agencies, Ltd.*, 352 S.W.3d 462, 472 (Tex. 2011), and *Houston Pipe Line Co. v. Dwyer*, 374 S.W.2d 662, 664–66 (Tex. 1964)). Finally, Davenport argues that at the very least the stricken provision created ambiguity, which should be resolved in his favor. Davenport Br. 18 (citing *Schwartz*, 511 F.3d at 405).

Davenport's arguments fail because, as we stated in *Schwartz*, plea agreements "must be interpreted as a whole and no part should be ignored." 511 F.3d at 405 (quoting Calamari & Perillo, *Contracts* § 3.13 (5th ed. 2003)). While Davenport homes in on the first part of Paragraph 14, the rest of that paragraph makes clear that the Government reserved the right to provide the District Court and the Probation Office with "all information in its possession which it deems relevant." Rec. No. 178, at 9. Meanwhile, Paragraphs 13, 26, and 38 all put Davenport on notice of the Government's significant flexibility at sentencing to respond to both his objections and the District Court's inquiries. The record shows that the Government raised the issue of the gun only in direct response to Davenport's argument that there was

10

insufficient evidence to connect the gun with his offense. Read as a whole, the plea agreement clearly permits this kind of advocacy.

The plea agreement also makes plain that Paragraph 14 contained *joint* recommendations of the parties. Recommendations that the parties had not agreed to, or that they could unilaterally make or oppose, were not included in that list. Accordingly, the removal of the gun enhancement meant simply that the parties no longer jointly agreed on that specific recommendation. It did not, as Davenport claims, mean that the parties had jointly agreed that the Government would be barred from bringing the gun enhancement to the Court's attention at sentencing. Davenport's argument ignores the other provisions of the plea agreement that explicitly permit the Government to do just that.

Davenport's argument also falls prey to the logical fallacy of the inverse—the incorrect assumption that if P implies Q, then not-P implies not-Q. *See NLRB v. Noel Canning*, 134 S. Ct. 2550, 2603 (2014) (Scalia, J., concurring in judgment) (explaining the logical error); Ruggero J. Aldisert, *Logic for Lawyers: A Guide to Clear Legal Thinking* 161 (3d ed. 1997) (same). Davenport essentially argues that striking the stipulation to the gun enhancement was tantamount to an agreement that he did not possess a firearm. He is incorrect. While striking the gun clause vitiated the recommendation, it did not tacitly impose the obverse recommendation.

Nor is Davenport's reliance on the Tenth Circuit's decision in *Scott* availing. The plea agreement in *Scott* delineated the "positions [the parties] expect to take at sentencing" and then articulated what those positions would be. *Scott*, 469 F.3d at 1338. The Tenth Circuit determined that the Government had breached the agreement because Scott

reasonably understood that language to mean the Government would not argue for other sentencing enhancements, but it did so anyway. *Id.* Here, the parties did not circumscribe the positions they were allowed to take at sentencing—a fact made evident when one reads the plea agreement as a whole, including the second half of Paragraph 14 and Paragraphs 13, 26, and 38. Rather, the parties consented to a list of joint recommendations and agreed that the Government would have substantial flexibility to advocate positions at sentencing.

IV

Because the Government did not breach Davenport's plea agreement, his trial counsel was not ineffective for failing to say there was a breach. The judgment of the District Court will be affirmed.