**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 14-3540

_____

UNITED STATES OF AMERICA


v.

ERIC J. JOHNSON,
                         Appellant

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 1-12-cr-00150-001)

District Judge:  Honorable Yvette Kane

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
March 20, 2015

Before:  SMITH, JORDAN, SLOVITER, *Circuit Judges*.

(Opinion filed: March 25, 2015)

_____

OPINION*

_____

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

SLOVITER, *Circuit Judge*.

Appellant, Eric Johnson, while represented by an Assistant Federal Public Defender ("AFPD"), Thomas Thornton, pled guilty to drug-related offenses on July 16, 2013. He later sought to withdraw his guilty plea, but that motion was denied. He was sentenced to 200 months' imprisonment. He now argues that his conviction should be overturned because of ineffective assistance of counsel. For the reasons discussed below, we will affirm the conviction and sentence.

I

The operative charging document was a superseding information that charged Johnson with one count of conspiracy to distribute crack cocaine between April, 2012, and June 8, 2012, but did not specify the quantity of drugs or the specific conduct at issue. The earlier indictment contained four counts and alleged offenses involving "at least 280 grams of a mixture and substance containing a detectable amount" of crack cocaine, but did not specify the precise quantity or conduct at issue. App. at 259. At the change of plea hearing, AUSA William Behe referred to the plea as a "charge bargain plea agreement," under which Johnson agreed to waive indictment and plead guilty to the superseding information. App. at 246. The benefit of this agreement to Johnson was that unlike the original indictment which contained four counts that "would have carried mandatory minimum terms of ten years with a maximum imprisonment up to life," by pleading guilty to the superseding information, Johnson would "not face any mandatory

2

minimum term of imprisonment," and his maximum sentence would be capped at 20 years. *Id.* The plea agreement also included a recommendation of a three level reduction in offense level for acceptance of responsibility.

At the change of plea hearing held before Magistrate Judge Martin C. Carlson, the Government stated, based largely on statements Johnson had made at an earlier proffer interview, that it would have proven several facts at trial, specifically that Johnson had sold 135.5 grams of crack cocaine to a confidential source working for the Dauphin County Police during a controlled buy on June 8, 2012, and that police recovered an additional 797.8 grams of crack cocaine and a gun during a search of Johnson's minivan. Judge Carlson asked, "Mr. Johnson, setting aside any of these issues of drug quantities, which I understand may be something the parties may be litigating, is that what happened here?" App. at 255. Johnson answered, "Yes." *Id.* The Judge conducted a thorough colloquy to determine that Johnson's plea was knowing and voluntary. The colloquy included the following exchanges:

> The Court: Have you seen a copy of that superseding information?
>
> The Defendant: Yes.
>
> The Court: Do you wish to have Mr. Behe [the Assistant U.S. Attorney] or Mr. Thornton read it out loud, or do you waive the reading of it out loud in court?
>
> The Defendant: I will waive it.
>
> . . .

The Court: And I take it, Mr. Behe, this case was previously indicted and this information may charge a lesser offense.

[The Government]: Yes. This is essentially a charge bargain. It takes count four of the original indictment, which was returned in June of 2012, takes out any reference to drug amounts, so there is no mandatory minimum that applies. But it's essentially count four of the original indictment.

The Court: I understand. And so we're discussing this right to waive the indictment, although you have been previously indicted, Mr. Behe is representing to us, on charges of somewhat greater gravity. But you understand you could insist upon an indictment?

The Defendant: Yes.

The Court: But as part of this plea agreement you are agreeing to waive indictment. Is that correct?

The Defendant: Yes.

. . .

The Court: . . . There is a plea agreement in this matter, and . . . [i]f you look at the last page there, there's a signature on it. Did you sign that agreement?

The Defendant: Yes.

The Court: And did you sign it after you and Mr. Thornton had a chance to go over each and every paragraph of the agreement?

The Defendant: Yes.

The Court: Do you feel like you had enough time to review the document before you signed it?

The Defendant: Yes.

The Court: And did you sign it voluntarily?

The Defendant: Yes.

4

App. at 241-43; 245-46. The Government summarized the terms of the plea agreement on the record, including the mandatory minimum sentence and potential life sentence that the original indictment carried, and that by pleading guilty to the superseding information Johnson would not face any mandatory term of imprisonment and would face a maximum sentence of 20 years. After that explanation, the colloquy continued:

> The Court: Mr. Johnson, does that sound like the agreement you have with the [G]overnment?
>
> The Defendant: Yes.
>
> The Court: Other than the promises outlined in the plea agreement described by Mr. Behe here in court, has anyone promised you anything to get you to plead guilty here?
>
> The Defendant: No.
>
> . . .
>
> The Court: And do you understand that the statutory maximum penalty for this offense as outlined in the plea agreement is 20 years imprisonment[?] . . .
>
> The Defendant: Yes.
>
> . . .
>
> The Court: And have you and Mr. Thornton talked about those guidelines and how they might apply to your case?
>
> The Defendant: Sort of, yes.
>
> The Court: . . . Has anyone estimated for you what those guidelines may be?
>
> The Defendant: Not exactly.
>
> . . .

5

> The Court: If someone has estimated for you what the guidelines might be, that's only their estimate and it's not binding on the Court. Do you understand that?
>
> The Defendant: Yes.
>
> The Court: . . . But at the end of that process, if it turns out that the guidelines are different or higher than you expected, you will still be bound by this plea agreement. Do you understand that?
>
> The Defendant: Yes.

App. at 247; 249-51.

After pleading guilty but before his sentencing, Johnson moved for appointment of new counsel, which the District Court granted. Johnson moved to withdraw his guilty plea, claiming that his former counsel (Thornton) had been ineffective for failing to suppress evidence of all drug quantities other than that recovered during the controlled buy. He also alleged that Thornton had promised him a sentence of 10-12 years, despite the statutory maximum for his charged offense being 20 years. During his testimony, Johnson claimed he had lied to Judge Carlson when he stated that no promises had been made regarding his guideline range. He also claimed he had lied to Judge Carlson when he stated that he had gone through every paragraph of the plea agreement with Thornton. Thornton testified that he did not promise Johnson any specific sentence, and that he read the entire plea agreement to Johnson. Johnson and Thornton also testified about their discussion regarding the guidelines. They agreed that Thornton discussed the guidelines to some extent, but Thornton testified that he did not provide any estimation of the

6

guidelines range while Johnson testified that Thornton did provide an inexact estimate of 10-12 years. The District Court denied Johnson's motion to withdraw his plea.

At sentencing, the District Court considered the Presentence Investigation Report ("PSR"), in which Probation reported that the Government's confidential source had given the DEA an additional 179.1 grams of crack cocaine that he claimed he bought from Johnson before the June 8, 2012 controlled buy. Johnson testified, and denied having sold the additional 179.1 grams to the confidential source. Furthermore, despite having admitted at his change of plea hearing that the minivan from which the police had recovered 797.8 grams of crack cocaine and a gun belonged to him, at sentencing Johnson claimed he had leased the minivan for a friend, and that he had no knowledge of or responsibility for the drugs and gun recovered from the minivan. The District Court also heard testimony from the two officers involved with Johnson's proffer interview and the controlled buy. They stated that at the proffer interview, Johnson admitted that he knew about the drugs and the gun in the minivan, but claimed that they were not his. They stated that the amounts of crack cocaine Johnson had possessed and trafficked were much greater than the amounts involved with the controlled buy and recovered from the minivan, and that they had seen Johnson operate the minivan and have access to the minivan briefly before the buy.

After hearing the testimony at sentencing and reviewing the testimony from the change of plea hearing, the District Court found that Johnson's testimony that he did not have a possessory interest in the minivan or know about the drugs in the minivan was not

7

credible. The Court held that Johnson's guidelines range should reflect the 135.5 grams of crack cocaine from the controlled buy and the 797.8 grams recovered from the minivan, as well as an enhancement for the gun that was also found in the minivan. The Court did not make a determination about the additional 179.1 grams Johnson allegedly sold to the confidential source before the controlled buy, because that additional quantity would not have changed the guidelines range. The Court sentenced Johnson to 200 months in prison.

On appeal, Johnson argues that his conviction should be overturned because of ineffective assistance of counsel by his original attorney, AFPD Thornton.[1] He claims that he believed he was only pleading guilty to conspiracy to sell the 135.5 grams of crack cocaine from the controlled buy, and that pleading to that offense would have resulted in a guideline sentence between 110 and 137 months, rather than the 200 months he received. Therefore, Johnson claims his trial counsel was ineffective for failing to move to suppress the additional crack cocaine that the confidential source turned over and the evidence seized from the minivan. Johnson argues these failures were denials of his Sixth Amendment right to counsel. Johnson also claims that AFPD Thornton was ineffective because he advised Johnson to accept the proposed guilty plea because he was

---

[1] We note that Johnson's appellate brief is written entirely in underlined, bold font, in contravention of Federal Rule of Appellate Procedure 32(a)(6). Counsel is advised that bold text should be reserved for adding emphasis.

afraid that Johnson would receive a sentence greater than twenty years, despite the fact that the statutory maximum for the charged offense was twenty years.

## II

The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291. Whether we construe this appeal as an ineffective assistance of counsel claim (as Johnson argues) or a challenge to the District Court's denial of Johnson's motion to withdraw his guilty plea (as the Government suggests), Johnson cannot prevail.

### A.  Ineffective assistance claims

The Government urges us not to consider Johnson's ineffective assistance claims because "[c]laims of ineffective assistance of counsel generally are not entertained on direct appeal." *United States v. Haywood*, 155 F.3d 674, 678 (3d Cir. 1998). "There is, however, a narrow exception to the rule that defendants cannot attack the efficacy of their counsel on direct appeal. Where the record is sufficient to allow a determination of ineffective assistance of counsel, an evidentiary hearing to develop the facts is not needed." *United States v. Headley*, 923 F.2d 1079, 1083 (3d Cir. 1991). We find that the record here is sufficient to decide the issue of AFPD Thornton's effectiveness because the District Court explored the issues Johnson raises on appeal at the hearing on Johnson's motion to withdraw his guilty plea. Both Johnson and Thornton testified at that hearing. "We exercise plenary review over the legal component of an ineffective assistance of counsel claim. We review the underlying facts for clear error, but exercise

9

independent judgment on whether those facts, as found by the District Court, show that counsel rendered ineffective assistance." *United States v. Davenport*, 775 F.3d 605, 608 (3d Cir. 2015) (internal citations omitted).

A defendant may withdraw a guilty plea based on ineffective counsel "only if (1) the defendant shows that his attorney's advice was under all the circumstances unreasonable under prevailing professional norms, [and that (2)] he suffered 'sufficient prejudice' from his counsel's errors." *United States v. Jones*, 336 F.3d 245, 253-54 (3d Cir. 2003) (internal citations omitted). Thornton appears to have done a sufficient job on Johnson's behalf. He negotiated a plea based on the superseding information, which carried no minimum sentence and a significantly lower maximum sentence than Johnson may have faced under the original indictment. Johnson's argument that Thornton's concerns about him receiving a higher sentence than the maximum sentence allowable under the superseding information is misplaced. The basis of the plea deal was to secure the superseding information itself, which significantly lowered the possible penalties Johnson could have faced. Johnson has presented no credible evidence suggesting that a motion to suppress the additional drugs and gun could have succeeded. Indeed, the District Court found that at least 933.3 grams were attributable to Johnson, a factual determination that the record supports and which we will not disturb. Thus, Thornton's conduct does not appear to have been unreasonable, and we will not vacate Johnson's conviction on ineffective assistance grounds.

10

**B.     Motion to withdraw guilty plea**

Analyzing this appeal as a challenge to the District Court's denial of Johnson's motion to withdraw his guilty plea renders the same result. "A defendant may withdraw a plea of guilty . . . after the court accepts the plea, but before it imposes sentence if . . . the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). When evaluating a motion to withdraw, a district court must consider "(1) whether the defendant asserts his innocence; (2) the strength of the defendant's reasons for withdrawing the plea; and (3) whether the government would be prejudiced by the withdrawal." *Jones*, 336 F.3d at 252. We review the District Court's denial of a motion to withdraw a guilty plea for abuse of discretion. *United States v. Martinez*, 785 F.2d 111, 113 (3d Cir. 1986).

The District Court found Johnson's testimony as to his reasons for withdrawing his guilty plea not to be credible. Given that Johnson's testimony was at odds with his own prior statements, and that he admitted to lying extensively under oath at his change of plea hearing, we agree. The District Court did not abuse its discretion in denying Johnson's motion to withdraw his guilty plea.

III

For the reasons discussed, we will affirm.