**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No.  11-1861

———————

UNITED STATES OF AMERICA

v.

PAUL BULTMEYER,

Appellant

———————

On Appeal from the United States District Court
for the District of New Jersey
(D. C. No. 2-10-cr-00356-001)
District Judge:  Honorable Jose L. Linares

———————

Submitted under Third Circuit LAR 34.1(a)
on April 24, 2012

Before:  SLOVITER and ROTH, <u>Circuit Judges</u>
and POLLAK*, <u>District Judge</u>

(Opinion filed: May 22, 2012)

———————

    *Honorable Louis H. Pollak, United States District Judge for the Eastern District
of Pennsylvania, sat by designation.  Judge Pollak died on May 8, 2012; this opinion is
filed by a quorum of the court pursuant to 28 U.S.C. § 46 and Third Circuit IOP 12.1(b).

**ROTH,** Circuit Judge:

Paul Bultmeyer appeals the District Court's March 18, 2011, judgment of sentence. For the following reasons, we will affirm.

## I. **Background**

Arthur Piacentini and Paul Bultmeyer opened and operated Ameripay, LLC, a company which handled payroll and tax withholding services for private companies and public entities. They later formed Sherbourne Financial, Ltd., and Sherbourne Capital Management, Ltd., (collectively, Sherbourne Entities), purportedly investment companies. Ameripay amassed a deficit that, according to Bultmeyer, arose from IRS tax penalties, legal fees related to a trademark suit, and losses associated with three frauds committed against Ameripay clients. To conceal the deficit, Piacentini and Bultmeyer diverted millions of dollars from Ameripay clients. They also solicited retirees to invest in Sherbourne Entities, advertising that they invested in private placement debt, high-grade corporate bonds, preferred stock, and government securities. In reality, Piacentini and Bultmeyer comingled the Sherboune Entities and Ameripay funds to pay monies due to Ameripay's payroll customers and the IRS.

Bultmeyer was arrested on May 15, 2009, and pled guilty, pursuant to a plea agreement, to one count of wire fraud on May 19, 2010.

In the Pre-Sentence Report (PSR), the Probation Office calculated that Bultmeyer had a total offense level of 30 and a criminal history category of I, resulting in an advisory Sentencing Guidelines range of 97 to 121 months imprisonment. The total offense level was calculated, in part, based on a 20-level increase for amassing a loss between $7,000,000 and $20,000,000 and a two-level increase for abusing a position of trust.[1]

At the sentencing hearing on March 18, 2011, the District Court carefully considered the PSR, sentencing memoranda submitted by both parties, and the arguments of counsel. The District Court found that the loss exceeded $7,000,000, warranting a 20-level enhancement, and that Bultmeyer was in a position of trust, warranting a two-level enhancement. After considering the statutory factors set forth in 18 U.S.C. § 3553(a), the District Court granted a downward departure and sentenced Bultmeyer to 60 months imprisonment.

Bultmeyer appealed.

## II. **Jurisdiction**

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

## III. **Discussion**

On appeal, Bultmeyer contends that the District Court erred 1) by failing to hold an evidentiary hearing before calculating the amount of loss, and, alternatively, by

---

[1] The PSR found that restitution of $8,391,414.36 is due to Ameripay clients and $215,000 is due to Sherbourne clients, totaling $8,606,414.36.

3

finding a loss of $8,606,414.36; 2) by incorrectly applying a two-level enhancement for abuse of trust; and 3) by imposing a sentence that was procedurally and substantively unreasonable.

## A. Loss Amount

Bultmeyer contends that the District Court should have held an evidentiary hearing before calculating the loss amount, and, in the alternative, that the amount is $6,854,762.94.[2] We need not address the merits of his claim, however, as Bultmeyer waived his right to appeal the loss calculation in the plea agreement.[3]

Bultmeyer concedes that he waived his right to appeal but argues that enforcing the waiver would work a miscarriage of justice. He asserts that the miscarriage of justice would result because the parties orally agreed that they could challenge the PSR loss calculation and that they could offer evidence relevant to the loss amount before sentencing. Bultmeyer notes that the District Court allowed such evidence at the sentencing hearing. However, even if we were to assume, *arguendo*, that the parties

---

[2] A loss of $6,854,762.94 would reduce Bultmeyer's total offense level by two.

[3] The plea agreement provides that:
1) The government and Paul Bultmeyer agree to stipulate to the following facts:
    a. The offense involved losses totaling over $7 million but less than $20 million; and
    b. The offense involved between 50 and 250 victims.
2) If the sentencing court accepts a factual stipulation set forth above, both parties waive the right to file an appeal, collateral attack, writ, or motion claiming that the sentencing court erred in doing so. Otherwise, both parties reserve the right to file, oppose, or take any position in any appeal, collateral attack, or proceeding involving postsentencing motions or writs.

made such an oral agreement, it would not nullify the waiver of the right to appeal. Instead, as Bultmeyer admits, the oral agreement affects the stipulation only "until and through the time of sentencing." That the District Court permitted evidence at the sentencing hearing bolsters Bultmeyer's argument that the parties orally agreed to a challenge of the PSR loss calculation at the time of sentencing. It does not, however, support the argument that the parties orally modified the waiver of appeal. Bultmeyer does not advance, and we do not conceive, any other reasons for a miscarriage of justice. Thus, we will uphold the waiver and affirm the District Court's calculation of the loss amount.

## B. Abuse of Trust

Bultmeyer argues that the District Court erred by concluding that he was in a position of trust under U.S.S.G. § 3B1.3. Under § 3B1.3, a court must find that 1) the defendant was in a position of trust and 2) he abused the position in a manner that significantly facilitated the crime. *See United States v. Nathan*, 188 F.3d 190, 196 (3d Cir. 1999). We consider only whether Bultmeyer was in a position of trust, as he does not challenge the District Court's conclusion that he abused that position. We review this issue *de novo*. *See id.* at 205.

To determine whether a defendant is in a position of trust, we consider: "1) whether the position allows the defendant to commit a difficult-to-detect wrong; 2) the degree of authority which the position vests in [the] defendant vis-á-vis the object of the wrongful act; and 3) whether there has been reliance on the integrity of the person

5

occupying the position." *United States v. Starnes*, 583 F.3d 196, 217 (3d Cir. 2009) (internal citation omitted).

Bultmeyer argues that he was not in a position of trust because he was not an owner of Ameripay, did not manage the day-to-day operations of the company, did not have access to the books, and had no means of verifying distributions. While Bultmeyer sold his ownership interest in Ameripay, he was still in a position of trust. Indeed, at Ameripay, Bultmeyer was in charge of the timing and amount of payments due to the IRS. As such, he was in a position of trust with Ameripay clients and responsible for the transactions at the heart of the fraud. Further, he was the principal owner of Sherbourne Entities and used his position to solicit investors to funnel money to Ameripay. Thus, we will affirm the District Court's finding that Bultmeyer held a position of trust.

## C. Procedural and Substantive Unreasonableness

Bultmeyer challenges both the procedural and substantive reasonableness of his sentence. We review the reasonableness of a sentence under an abuse of discretion standard. *See United States v. Tomko*, 562 F.3d 558, 567-68 (3d Cir. 2009).

Bultmeyer contends that his sentence was procedurally unreasonable because the District Court did not properly balance the § 3553(a) factors. Since this inquiry relates to substantive reasonableness, and Bultmeyer has made no other procedural arguments, we will address his arguments under a substantive reasonableness analysis.

As to the § 3553(a) factors, while Bultmeyer may disagree with the weight the District Court gave to these factors, we conclude from our review of the record that the District Court thoroughly considered arguments from both parties. Indeed, the District

6

Court granted a downward departure based on Bultmeyer's mitigating factors, while also recognizing that Bultmeyer was involved in the fraud for a number of years and the losses to clients were staggering.

Second, Bultmeyer contends that the District Court inadequately considered sentencing disparities under § 3553(a)(6) because his co-defendant was sentenced to 30 months imprisonment. This disparity does not, however, demonstrate an abuse of discretion. As stated above, the District Court considered all relevant factors before sentencing Bultmeyer.

After a careful review of the record, we conclude that the 60-month sentence imposed by the District Court was reasonable.

## IV. Conclusion

For the foregoing reasons, we will affirm the judgment of sentence entered by the District Court.