NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-3605
_____

UNITED STATES OF AMERICA

v.

ROBERT G. BARD,
                              Appellant
_____

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Criminal Action No. 1-12-cr-00181-001)
District Judge: Honorable Sylvia H. Rambo
_____

Submitted Under Third Circuit LAR 34.1(a)
June 8, 2015

Before: AMBRO and COWEN, <u>Circuit Judges</u>,
and RESTANI,♦ <u>Judge</u>

(Opinion filed: September 4, 2015)
_____

OPINION*
_____

AMBRO, <u>Circuit Judge</u>

_____

♦ Honorable Jane A. Restani, Judge, United States Court of International Trade, sitting by designation.

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Appellant Robert Bard was convicted of securities fraud, investment advisor fraud, wire fraud, mail fraud, bank fraud, and making false statements. He appeals the admission of certain testimony and documents and also challenges his sentence as procedurally unreasonable. We affirm the District Court.

## I. Background

From 2000 to 2004, Bard worked as a stock broker at Centaurus Financial, Inc. Following an internal review, the company reported to the National Association of Security Dealers (NASD) that Bard had forged customer signatures and guaranteed a customer a particular investment return for a variable annuity. As a result, Bard was fired and was barred from associating with NASD members. He filed for personal bankruptcy soon after.

Unable to work as a broker, Bard started a business as an investment advisor. Many of his clients were elderly, retired and unsophisticated investors. Despite promising a conservative investment strategy, Bard purchased high-risk securities that resulted in millions of dollars of losses in 2007 and 2008 when the country entered the Great Recession. During this period, Bard sent clients doctored account statements that masked the losses. He also instructed his secretary, Edwin Donaldson, to compose and send clients a newsletter falsely stating that the investments were in good health. When TD Ameritrade refused to provide further services to Bard due to his financial mismanagement, he instructed Donaldson to write and send a newsletter falsely

attributing the decision to the small size of Bard's business. He also instructed Donaldson to forge clients' signatures on IRA disbursement forms "innumerable times."

Bard's scheme came toppling down in 2009 when a client unwittingly overdrew on her account. The SEC began an investigation, filed a complaint in federal court alleging fraud, and obtained summary judgment against him. The United States Attorney's Office also filed a criminal indictment and obtained convictions on all charges after a jury trial. At sentencing, the District Court determined that the relevant Guideline range was 262 to 327 months. It imposed a sentence at the bottom of the range and ordered $4 million in restitution.

## II. Evidentiary Claims

Bard first claims that the District Court erred by admitting irrelevant and prejudicial evidence about the SEC's civil action against him. Fed. R. Evid. 402, 403. Specifically, he points to evidence that the SEC investigated and arrested him, that it sought a temporary restraining order, permanent injunction, disgorgement, and monetary penalties, and that it obtained summary judgment. Defense counsel objected to the admission of evidence about the SEC proceeding only once throughout the entire trial, and even then only after the Court had already admitted testimony from the witness about the investigation, complaint and restraining order. The admission of nearly all of the challenged evidence is thus subject to plain error review, and we will reverse only if there is (1) an error that, (2) is plain, (3) "affect[s] 'substantial rights,'" and (4) "'seriously affects the fairness, integrity or public reputation of judicial proceedings.'" *United States*

*v. Mornan*, 413 F.3d 372, 379–80 (3d Cir. 2005) (quoting *United States v. Plotts*, 359 F.3d 247, 249 (3d Cir. 2004)).

Second, Bard claims the District Court erred by admitting a document called "Bard Misrepresentations" that he gave to the SEC in connection with the civil action. He argues this violated Federal Rule of Evidence 410, which prohibits the admission of a statement made during a plea negotiation that ultimately did not result in a guilty plea. Bard properly preserved this objection.

With respect to Bard's first and second claims, the Government argues that the admissions were harmless because there was other "overwhelming evidence of guilt" at trial. Appellee Br. at 41, 51; *see United States v. Quintero*, 38 F.3d 1317, 1331 (3d Cir. 1994). According to the Government, Bard conceded that he "repeatedly lied to his clients and repeatedly provided them with phony account statements to conceal the enormous losses they were suffering." *Id.* at 4. In total, 16 victims testified that

> (1) they would never have invested money with Bard if they knew about the circumstances of his termination at Centaurus [and] his life-time ban from associating with [NASD] members, . . .; (2) they all wanted conservative, low-risk investments, and Bard promised he would follow their instructions; (3) they all believed their accounts were growing based upon false verbal assurances and phony account statements they repeatedly received from Bard; and (4) they all lost significant amounts of money as a result.

*Id.* at 30–31.

We hold that the record provides sufficient evidence of Bard's guilt to make any error harmless. See *United States v. Cross*, 308 F.3d 308, 326 (3d Cir. 2002) (holding

4

that although the Government has the burden of showing that an error was harmless, a reviewing court can affirm for any reasons supported by the evidence).

Bard's third claim is that the District Court violated Federal Rule of Evidence 404(b)—which prohibits evidence of "prior bad acts" unless the Government and Court "identify a proper, non-propensity purpose," *United States v. Caldwell*, 760 F.3d 267, 274 (3d Cir. 2014)—by admitting evidence that he filed for personal bankruptcy in 2005 and was investigated and disciplined by the NASD. Bard contends the District Court erred in concluding that this evidence was admissible under Rule 404(b) as relevant to motive. But he fails to challenge the District Court's alternative holding that the bankruptcy and NASD evidence did not encourage an improper propensity inference with respect to the charged crimes. We thus deny his claim.

### III. Sentencing Claims

Bard next challenges his sentence as procedurally unreasonable. Prior to sentencing, Bard submitted a memorandum identifying "cases in which courts had imposed downward variances for first time offenders who committed economic crimes with comparable loss amounts." Appellant Br. at 60. Bard argues that, by ignoring these cases, the District Court failed to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). We disagree. Bard did not ask the Court to impose a sentence similar to those in the cases he cited. Instead, he asked for a downward variance *of indefinite size* because courts have given other defendants who are not similarly situated a downward variance based on a few factual circumstances also present here

(*e.g.*, first time economic offender).  But § 3553(a)(6) does not require courts to consider whether a defendant deserves a downward variance because other factually dissimilar defendants received one.  It only requires the court to consider "sentence disparities" among defendants who are similarly situated in all relevant respects.  *United States v. Vargas*, 477 F.3d 94, 100 (3d Cir. 2007) (holding that under § 3553(a)(6) the defendant must show that the circumstances of other defendants with lower sentences "exactly paralleled his" (internal quotation marks omitted)).

Next, Bard claims the District Court erred by applying a two-level supervisory enhancement under United States Sentencing Guidelines § 3B1.1(c) [hereinafter USSG], which applies to "an organizer, leader, manager, or supervisor in any criminal activity" with fewer than "five participants."  U.S. Sentencing Guidelines Manual § 3B1.1(c) (U.S. Sentencing Comm'n 2014).  A participant is "a person who is criminally responsible for the commission of the offense, but need not have been convicted."  *United States v. Tai*, 750 F.3d 309, 318 (3d Cir. 2014) (quoting USSG § 3B1.1 cmt. n.1).  A participant is "criminally responsible" if he "commit[s] all of the elements of a statutory crime with the requisite *mens rea*."  *United States v. Badaracco*, 954 F.2d 928, 934–35 (3d Cir. 1992) (emphasis in original).  To apply the § 3B1.1(c) enhancement, the Government must prove by a preponderance of the evidence that the alleged participants were criminally responsible themselves.  *Tai*, 750 F.3d at 318–19.  The District Court concluded that Donaldson was a criminally responsible participant under § 3B1.1(c) because he forged clients' signatures on IRA disbursement forms and faxed them to TD Ameritrade.

We "apply the deferential clearly erroneous standard to factual determinations underlying [the] application" of the Sentencing Guidelines. *United States v. Katora*, 981 F.2d 1398, 1401 (3d Cir. 1992). The trial record contains some circumstantial evidence that Donaldson knew he was facilitating a fraud by forging the signatures and faxing the documents. He testified that he knew Bard was "lying to clients and cheating." He knew Bard was overcharging clients by assessing fees on both a quarterly and annual basis. Donaldson was responsible for writing a monthly newsletter to clients, and he knew they contained false statements about the health of the investments. After TD Ameritrade refused to continue servicing Bard's accounts due to his financial mismanagement, Donaldson sent out a letter to clients at Bard's direction knowing it falsely stated that the reason for the discontinuation of service was the small size of Bard's business. Donaldson signed documents in clients' names "innumerable times" over the course of three years. Bard taught Donaldson to copy clients' signatures by tracing them up against a window and told him that the client agreement forms gave him permission to do so. At trial, Donaldson explained why he did not believe that this conduct was forgery: "The[ SEC] asked me initially if I had forged signatures, and I said, I didn't forge, I signed them, because I was not gaining anything from signing their signatures, so I didn't consider it forgery." That Donaldson gave this reason suggests he did not believe Bard had obtained clients' authorization to sign for them. Based on all of this circumstantial evidence, we cannot conclude the District Court committed clear error in finding by a preponderance of evidence that Donaldson was a criminally responsible participant under § 3B1.1(c).

Finally, Bard claims that the District Court based its calculation of the clients' losses on inadequate evidence. As he raises this objection for the first time on appeal, we review it for plain error. Even if the Court did err, we cannot conclude it affected substantial rights because Bard does not provide any of the evidence he believes was missing from the Court's calculation nor any estimate of the size of the error.

We have closely considered all of Bard's remaining claims and conclude that they are unpersuasive. We thus affirm the District Court.