**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 18-3754

UNITED STATES OF AMERICA

v.

ROBERT G. BARD,
                    Appellant

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Criminal Action No. 1-12-cr-00181-001)
District Judge: Hon. Sylvia H. Rambo

Submitted Under Third Circuit L.A.R. 34.1(a)
January 21, 2020

Before: AMBRO, MATEY, and FUENTES, Circuit Judges

(Opinion filed:  February 12, 2020)

OPINION*

AMBRO, Circuit Judge,

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Robert Bard appeals his conviction for 21 counts of securities fraud, investment advisor fraud, wire fraud, mail fraud, and making false statements. The District Court sentenced him to 262 months in prison. In 2016, Bard filed a motion to vacate his sentence under 28 U.S.C. § 2255, alleging that three of his prior attorneys rendered constitutionally ineffective assistance of counsel throughout nearly every stage of his proceeding. The District Court denied his motion without a hearing on the record. On appeal, Bard moved to supplement the record and we granted his motion. After reviewing the additional evidence, we agree that the record does not support Bard's ineffective-assistance claims, and we affirm the District Court.

## I.  Facts and Procedural History

In 2009, the Securities and Exchange Commission (SEC) and Federal Bureau of Investigation (FBI) opened an investigation into Bard's conduct as an investment advisor. Later that year, Bard voluntarily participated in a "proffer interview," during which he admitted to providing his clients with doctored account statements to conceal his portfolio's losses, borrowing funds from his clients, and lying to the authorities.

In June 2010, the Government sent Bard's then-attorney, Robert Welsh, a proposed plea offer. It provided that the maximum sentence for a single count of mail fraud was 20 years and that the Government would make a sentencing recommendation within the Guidelines range after an evidentiary hearing on the loss amount.

That August, Welsh responded in a letter that neither accepted nor rejected the plea. The Government replied on August 26, indicating that the plea offer was still open. Welsh forwarded the offer to Bard on September 1. Later that month, Welsh sent Bard a

lengthy email advising him on several aspects of his case and the proposed plea deal. The email stated that if the prosecution "has to continue with the investigation using the FBI and the grand jury, [it] will pursue every possible sentencing enhancement, including jacking up the loss calculation." App. 78. The email went on to explain that Bard did not have a defense on the wire fraud charge, that he was best positioned to negotiate a deal before the prosecutor's office investigated his case further, and that any mitigating factors would not be of help before a jury. Welsh concluded, "if you went to trial in what is basically a losing effort, you would risk losing the sentencing judge in terms of these mitigating factors." App. 79. Bard replied that he would have a decision by that Friday, but there is nothing in the record showing that he ever followed up with Welsh. *Id.*

At the end of September 2010, Bard fired Welsh and retained Dennis Boyle. Bard initially told Boyle that he was not guilty and would not plead guilty. Eventually, he indicated that he might plead guilty if he was sentenced to probation. Boyle spoke with the prosecution about the possibility of a probationary sentence and was told that it was not an option.

A grand jury indicted Bard in July 2012. Boyle communicated with the prosecutor's office about a potential plea deal as late as January 2013, although by then he believed there was a high probability that the case would go to trial.

Boyle sent Bard a letter in July 2013 stating that there was no outstanding plea offer from the Government, that Bard had been "fully aware of the previous plea offer originally conveyed to [his] prior counsel, Robert Welsh, Esquire, and [that Bard had]

3

voluntarily rejected that offer." App. 93. Bard signed the letter, acknowledging that he had read it carefully and discussed it with his counsel.

A jury convicted Bard of all counts at trial. The District Court held a pre-sentencing evidentiary hearing on the loss amount and number of victims. Bard did not have an expert witness at this hearing, and afterwards Boyle moved to withdraw as counsel. The District Court determined that Bard's conduct resulted in $2.5 to $7 million of losses and affected over 50 victims. As noted, Bard received a 262-month sentence.

Fredrick Ulrich, a court-appointed attorney, represented Bard on appeal. We affirmed the District Court. *United States v. Bard*, 625 F. App'x 57 (3d Cir. 2015).

Bard thereafter filed a motion to vacate his sentence under 28 U.S.C. § 2255. He alleged that his attorneys were ineffective for not fully communicating the plea offer, failing to hire a financial expert regarding losses at trial and sentencing, and for deficiently arguing the direct appeal of his sentence. The District Court dismissed Bard's motion without an evidentiary hearing, ruling that the record conclusively established that his ineffective-assistance-of-counsel claims lacked merit. Bard appeals to us.

## II.     Discussion

We have jurisdiction over Bard's claims under 28 U.S.C. § 2253. We exercise plenary review over the legal component of claims for ineffective assistance of counsel. *United States v. Smack*, 347 F.3d 533, 537 (3d Cir. 2003). "The underlying facts are reviewed for clear error, and are subject to independent judgment on whether the facts thus found constitute constitutionally ineffective assistance of counsel." *Id.* (internal citations omitted).

4

In order to show that his lawyers rendered ineffective assistance of counsel, Bard must establish "(1) that counsel's representation fell below an objective standard of reasonableness and (2) that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *United States v. Nino*, 878 F.2d 101, 103 (3d Cir. 1989) (citing *Strickland v. Washington*, 466 U.S. 668, 687-96 (1984)).

1. Welsh's Representation During the Plea Negotiation

Bard alleges that his pre-indictment attorney, Welsh, failed to inform him of the June 2010 plea offer until after it had lapsed and failed to counsel him on his sentencing exposure under the plea. "Defendants have a Sixth Amendment right to counsel, a right that extends to the plea-bargaining process." *Lafler v. Cooper*, 566 U.S. 156, 162 (2012). The District Court dismissed Bard's claim, ruling that he did not have a constitutional right to counsel during Welsh's representation. It based its decision on nonbinding, out-of-circuit caselaw that holds the right to counsel does not attach until indictment. *United States v. Bard*, 2018 WL 6044688, at *4 (M.D. Pa. Nov. 19, 2018) (citing *Kennedy v. United States*, 756 F.3d 492, 493–94 (6th Cir. 2014)). We have never had occasion to reach this issue and decline to do so here.

In the alternative, the District Court found that Welsh informed Bard of the plea offer, and he voluntarily rejected it. Notification of the terms of a plea offer alone does not qualify as "reasonably effective assistance of counsel." *United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992). To the contrary, we have noted that "[k]nowledge of the comparative sentence exposure between standing trial and accepting a plea offer will often be crucial to the decision whether to plead guilty." *Id.*

5

We affirm the District Court's ruling that Welsh's representation was reasonably effective assistance. Emails conclusively show that Welsh sent the offer to Bard on September 1, 2010, just six days after the Government confirmed that it was still open. By the end of the month, Welsh had provided Bard with an explanation of why he would likely receive a more lenient sentence under the plea. In addition, Bard acknowledged that he received the 2010 offer from Welsh and voluntarily rejected it in the 2013 letter.

2. Boyle's Representation During the Plea Negotiation

We also affirm the District Court's denial of Bard's claim that Boyle rendered ineffective assistance of counsel by failing to explain the plea offer to him. The Court rejected this claim after finding that the record conclusively showed that the offer was not open during Boyle's representation.

The record is more nuanced. It reveals that Government confirmed the offer was open fewer than 30 days before Boyle took over the case. And Bard's acknowledgement that the offer was no longer available in 2013 does not mean he could not have accepted an offer in 2010.

In the alternative, the District Court reasoned that, even if the offer had been open during Boyle's representation, Bard's claim fails on *Strickland*'s second prong because he cannot show prejudice. Here, Bard must establish a reasonable probability that, but for counsel's errors, he would have accepted the plea. *Lafler*, 566 U.S. at 163.

We agree that Bard cannot show prejudice. Boyle stated that Bard initially refused to plead guilty and later indicated that he would only accept a plea that resulted in a probationary sentence. Bard's refusal to acknowledge wrongdoing throughout his

6

proceeding further supports the lack of prejudice. Bard's statements and actions make clear that he would not have accepted a plea that resulted in any term of imprisonment. Thus, this claim fails as well.

3. The Expert Witness

Bard also alleges that Boyle rendered ineffective assistance of counsel because he failed to retain an expert witness to testify on the appropriate damages calculation at Bard's sentencing hearing. Fewer than two weeks before the scheduled hearing, Bard filed a motion to continue because his expert witness needed more time. After holding a conference call with the parties, the District Court concluded that "it was Bard's belated decision to retain an expert only weeks before the hearing that caused the expert to be unprepared to testify on an issue that had been identified by defense counsel prior to trial." *Bard*, 2018 WL 6044688, at *2. We agree that any prejudice Bard suffered because of the Court's decision not to reschedule his hearing was "due to his unilateral decisions and feet-dragging tactics." *Id.* at 5 (internal citation omitted).

As the record conclusively refutes Bard's ineffectiveness claim, we affirm the denial of it.

4. The Direct Appeal

Bard alleges that on direct appeal his attorney, Ulrich, rendered ineffective assistance of counsel because he failed to present certain cases as part of his request for a downward variance based on 18 U.S.C. § 3553(a)(6), which instructs courts to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Under this framework,

7

"disparate sentences are allowed where the disparity is explicable by the facts on the record." *United States v. Parker*, 462 F.3d 273, 278 (3d Cir. 2006) (internal citation omitted). On direct appeal, we determined that Bard was not similarly situated to the defendants in the cases cited in his Sentencing Memorandum. *Bard*, 625 F. App'x at 60. He also is not similarly situated to the defendants in the cases he cites here.

For example, at sentencing the District Court determined Bard's total offense level was 41, which included an 18-point adjustment given the loss amount. The defendant in *United States v. Bultmeyer*, 483 F. App'x 750, 752 (3d Cir. 2012), had a total offense level of 30, while the defendants in the *United States v. Fattah*, 858 F.3d 801 (3d Cir. 2017), and *United States v. Musgrave,* 647 F. App'x 529 (6th Cir. 2016), had loss calculations under $2 million. Furthermore, Bard took his case to trial and received a two-level adjustment for obstruction of justice, while the defendants in the other cases he cites pled guilty and did not receive any adjustments for obstruction of justice. *United States v. Carpenter*, 841 F.3d 1057 (8th Cir. 2016); *United States v. Andre*, 600 F. App'x 824 (3d Cir. 2015); *United States v. Colamarino*, 2017 U.S. Dist. LEXIS 52800 (W.D. Pa. April 6, 2017). The failure to cite these cases does not constitute deficiency under *Strickland*, as none of the defendants were similarly situated to Bard. We thus affirm the District Court's dismissal of this claim as well.

5. The Evidentiary Hearing

Finally, Bard claims that the District Court abused its discretion when it did not hold an evidentiary hearing. A "court abuses its discretion if it fails to hold an evidentiary hearing when the files and records of the case are inconclusive as to whether

8

the movant is entitled to relief." *United States v. Booth*, 432 F.3d 542, 546 (3d Cir. 2005). While it is plausible that the District Court should have held an evidentiary hearing, on appeal Bard filed a Motion to Supplement the Record with evidence that would have been presented at the hearing. The additional evidence resolves any doubts that Bard's attorneys provided reasonably competent representation. Thus, we see no need to remand this case for an evidentiary hearing.

* * * * *

We affirm the District Court's denial of Bard's petition.